MAGEE *v.* STATE.

(En Banc. July 19, 1929. Suggestion of Error Overruled June 10, 1929.)

[122 So. 766. No. 27992.]

*Ovie L. Berry*, of Newhebron, for appellant.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

Argued orally by *Ovie L. Berry,* for appellant, and by *J. A. Lauderdale,* Assistant Attorney-General, for appellee.

Cook, J., delivered the opinion of the court.

The appellant, Oliver Magee, was convicted in the circuit court of Lawrence county of murder, and was sentenced to be hanged, and from this conviction and sentence, he prosecuted this appeal.

The state offered the testimony of the sheriff of the county, who testified that on the morning of the homicide the appellant came to his office and told him that he had shot Ernest Tyrone; that he shot him in his, appellant's, yard, and he was lying in the yard when he left home, but he did not know whether or not he was dead; that he shot him because he had been "messing" with him for a week; that the appellant then handed to him a single-barrel, breech-loading shot-gun, and stated that it was the weapon he had used; that he also handed to him ten shotgun shells, three of which were loaded with buckshot.

The sheriff further testified that he immediately went to appellant's home, and found the body of Tyrone ly-

ing in the yard, and that he was lying back against the fence, with his head propped up against the baseboard of the fence. Upon examination of the body of the deceased, he found that one load of buckshot and small shot had struck the deceased in the abdomen near the waistline; that the shot tore their way through the sweater and vest worn by the deceased, and ranged upward, practically covering the chest and body up to the chin and face; that the bullets glanced upward, and fragments of the deceased's sweater and vest were torn off by the bullets, and were imbedded in the baseboard near deceased's head, where some of the shot entered the baseboard.

He further testified that, when he turned the body over, he found that a load of eight or ten buckshot and forty or fifty small shots had struck the deceased straight in the back. He found one empty shell ten steps from the body of the deceased, and another eighteen steps from the body.

The sheriff further testified that, when he examined the clothing of the deceased, he found in the pockets a purse containing about eight dollars in currency, and a knife wrapped in a rag or handkerchief, and a razor in the shirt pocket under the sweater and vest; but he did not find any pistol. With the exception of certain rebuttal testimony, this concluded the testimony for the state.

The appellant was a tenant on the farm of deceased, and he and his witnesses testified that on Sunday before the homicide on the following Saturday the deceased came to appellant's home, and they then had a fuss about some money matters, and the amount that would be required to furnish the appellant during the year, and as a result of this fuss the deceased ordered the appellant to move off his place; that on the following day they again quarreled about a stove and bedstead that the

appellant purchased on the deceased's guaranty, and which he had not fully paid for; and that the fussing and ill feeling between these parties continued until Thursday, when they had a fuss, during the progress of which the deceased accused the appellant of having gone to Monticello to have him indicted, and threatened to kill him if he did have him indicted; that on Friday the appellant made arrangements to move to the farm of Homer Hartzog, and he and Mr. Hartzog interviewed the deceased for the purpose of getting his consent to this move, and that a supposedly satisfactory adjustment of all their differences was arranged.

These witnesses further testified that on Saturday morning the appellant and young Daley Hartzog rode in a wagon to appellant's home for the purpose of moving his household goods to Mr. Hartzog's place; and that before they reached the home of the deceased they met him, and he thereupon climbed on to the wagon and rode with them past his home, and to appellant's home; that, while they were loading the household goods on to the wagon, the deceased was continuously quarreling and fussing with the appellant; that he demanded a razor that he had sold to the appellant, and which had not been fully paid for, and after some controversy over the razor the appellant finally instructed his wife to deliver it to him, and she did so.

The appellant further testified that he then took his shotgun and went out into a woodland near the house, to see if he could kill or catch some chickens which belonged to him; that he put his gun against the fence near the chicken house, and undertook to catch the chickens; that he was so engaged about thirty minutes, and when he returned to the yard the deceased accused him of taking some corn which belonged to the deceased; that, after some disputing and quarreling about the corn, the deceased started toward him with his hand

in his pocket, trying to draw a pistol; that he, the appellant, stepped to his gun and picked it up and told deceased not to come any further toward him; that the deceased kept advancing on him, trying all the while to draw a pistol from his pocket; that he saw the pistol and knew that he had it; that the deceased was facing him, and was coming straight toward him, and thereupon he shot him without raising the gun to his shoulder; that the deceased did not fall at the first shot, but continued to advance on him, staggering and leaning a little, but still trying to get the pistol out of his pocket; that he, appellant, quickly reloaded the gun, and then shot the second time, and left immediately and went to the sheriff's office.

As to the fact that the deceased was advancing toward the appellant at the time the first shot was fired, the appellant was corroborated by the testimony of his wife, but she did not claim to know the position of the deceased at the time of the second shot. Daley Hartzog testified that the appellant and the deceased were quarreling and fussing all the morning, but he did not think there would be a fight, and was not looking toward them when the first shot was fired; that the last time he saw the deceased before the shot was fired, he was advancing toward the appellant; that when he looked around after he heard the shot, the appellant was reloading his gun, and the deceased was staggering backward; that the appellant immediately shot again, but he was unable to say whether the deceased was on the ground at the time of the second shot.

A witness for the defendant testified that Almeda Dugan, a sister of the deceased, and R. W. Dugan, her son, went to the body of the deceased before the sheriff arrived, but she could not tell whether or not they took anything from his body, and that she did not see them take a pistol from his body or clothing.

In rebuttal the state offered two witnesses, who testified that they were the first ones to reach the scene of the homicide, and that no person went into the yard or to the body of the deceased prior to the arrival of the sheriff.

The appellant first contends that the court below erred in refusing to set aside the verdict and grant him a new trial, on the ground that the evidence was insufficient to sustain the verdict. It is true that, where the testimony for the defendant is reasonable, and makes a case of self-defense, and there is nothing in any of the testimony or the physical facts to discredit or contradict the theory of self-defense, a verdict of guilty will not be permitted to stand; but such is not the case here. The appellant stated shortly after the shooting that he shot the deceased because he had been "messing" with him for a week. At that time he made no claim of self-defense. He testified that he fired twice at the deceased, and that he was facing him and advancing toward him when both shots were fired, and that he did not at any time advance toward the deceased. Two empty shells were found, one eighteen steps and the other ten steps from the body of the deceased. Daley Hartzog, a witness for the appellant, testified that, immediately after the first shot was fired, the empty shell was thrown from the gun, and the appellant reloaded it, and that the appellant and deceased were about twenty steps apart when the first shot was fired.

The position of the body of the deceased against the baseboard of the fence, and the bullets and fragments of vest and sweater which were embedded in the baseboard near the face and head of deceased, strongly tends to contradict the appellant's testimony as to the position of the deceased when the first shot was fired, and strongly tends to prove that the shot which took effect in the deceased's abdomen and chest was fired after the de-

ceased had fallen to the ground against the fence; and also tends to prove that the first shot fired was the one which went straight into the back of the deceased. The appellant testified that the deceased was trying to draw a pistol, and that he saw the pistol, and knew that he did have one in his pocket; while there was testimony for the state that the sheriff was the first person to go to the body of the deceased, and that he had no pistol when the sheriff examined his body and clothing.

Upon the whole evidence the question of the guilt or innocence of the appellant was one of disputed fact, which was properly submitted to the jury, and we think the verdict is amply supported by the evidence.

The appellant next contends that the court erred in allowing the state to introduce certain rebuttal testimony, the substance of which has been hereinbefore set out. The court committed no error in admitting this testimony for two reasons: First, there was no proper objection offered thereto, and, second, the testimony was properly admitted in rebuttal of certain testimony offered by the appellant. Likewise, no error was committed in sustaining the state's one objection to testimony offered by the appellant in surrebuttal.

There is no merit in appellant's criticism of the two instructions granted at the request of the state, one of which is a correct statement of the law of self-defense, and the other an approved instruction, giving the form of the verdicts that might be rendered under the evidence.

The appellant next complains of certain language alleged to have been used by the district attorney in his argument to the jury, and which is incorporated in an unsigned paper designated a special bill of exceptions, which is sent up with this record. This purported special bill of exceptions is not made up in any manner

prescribed by law, and therefore is not a proper part of the record, and cannot be considered by us.

Finally, the appellant contends that the court below erred in overruling the motion for a new trial, on the ground of newly-discovered evidence. This motion was not supported by the affidavit of the appellant and his attorney, showing diligence on their part with reference to the discovery of the evidence, and that the same was unknown to them at the time of the trial. The testimony offered in support of the motion at the hearing thereof shows that the alleged newly-discovered evidence was purely hearsay, and therefore inadmissible. No error was committed in overruling this motion for a new trial.

We think the testimony in this cause is sufficient to support the verdict of the jury, and we have found no reversible error in the. record, and therefore the judgment of the court below will be affirmed, and Friday, July 19, 1929, is fixed as the date for the execution of the sentence of the court below.

*Affirmed.*