## TOWNSEL *v.* STATE

No. 40187 May 21, 1956 87 So. 2d 481

*E. Cage Brewer, Leon L. Porter, Jr.,* Clarksdale, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

Etheridge, J.

On December 28, 1955, appellant Dewey Townsel killed his wife by stabbing her with a knife. He was indicted, tried and convicted for her murder and sentenced to death. On this appeal the principal issue is whether he should have a new trial because of newly discovered evidence.

### I.

Townsel and his wife Sizzie lived on a plantation in Coahoma County. She decided to move to another farm, and with the help of her mother Ollie Jamison, her brothers Robert Jamison, Jr., and Clyde Jamison, and her daughter Ollie Mae McCranney, Sizzie moved her clothing, belongings and furniture to a house on another plantation. Around 2:00 to 3:00 o'clock on the afternoon of December 28, 1955, appellant came to the house and spoke to his wife, her mother, brothers and daughter. He told Sizzie he wanted to speak to her, so she went to the back door, but stopped there, saying she would go no further. They then went back to the front room. Appellant asked his wife where the blanket was which he had given her, and she told him it was in the trunk. Sizzie asked her mother to get the blanket, and after she had obtained it Ollie looked around and saw appellant

stabbing his wife Sizzie with a large knife. The deceased's mother, daughter, and two brothers all testified at the trial. Their versions were in substantial agreement. Sizzie received four knife wounds, one in the back and three in the front of her body. She apparently died almost instantly. The four eyewitnesses all testified that they noticed nothing unusual about appellant's appearance. He did not seem to be mad about anything; and appeared to be in a normal frame of mind, "just like always." When he came in and spoke to his wife's family, he did not seem to be angry at anyone. These statements by the State's witnesses were elicited upon cross-examination by appellant's counsel.

Townsel drove up to the house where the killing occurred in a car with Willie Spencer. Spencer remained out in front of the house. Robert, Sizzie's eighteen year old brother, went outside to talk with Spencer. He heard his mother call out to him for help. Robert ran in the house and saw appellant sitting on Sizzie, striking her with the knife. Robert hit appellant on the head with a hoe, breaking the handle. Appellant turned and started chasing Robert, who ran around the house and back into it, and picked up a shotgun. Robert then began chasing appellant, and chased him for some distance with the shotgun containing No. 6 shot. Robert shot appellant in the back two times, peppering his back with the shot. Robert chased appellant, who was running at full speed, about one-half of a mile, and finally caught him and restrained him until Deputy Sheriff George Butler arrived. Butler testified that blood was dripping a little bit from appellant's back from the buckshot. He asked Townsel about his wife, and he said "Yes, sir, I cut her." Asked why he did it, Townsel replied, "She made me mad." Appellant gave Butler no trouble when arrested. In about fifteen minutes Butler turned the prisoner over to Deputy Sheriff Thomas E. Bingham, who also testi-

fied that Townsel admitted stabbing his wife with a knife. He described the four wounds on her body.

## II.

The verdict of guilty and the judgment of the circuit court were entered on January 19, 1956. On January 25, six days later, appellant by his attorneys filed an unsworn motion for a new trial. No affidavits were attached to it, but testimony was taken. Appellant did not testify. The motion averred that appellant's counsel had been diligent, but that nevertheless after the trial Dr. I. S. Coe, the Clarksdale physician who treated defendant for gunshot wounds on the afternoon of the killing, contacted his attorneys and advised them that when he treated him for gunshot wounds that afternoon, appellant was so drunk as to be unable to have wilfully harbored a malicious intent to kill his wife.

Appellant's two attorneys, who were appointed by the court and who have handled this matter capably and well, said that the indictment was returned on January 9, and they were appointed on January 11, prior to the trial on January 19; that on the day of their appointment and on other occasions before trial they went to Jonestown and other communities in the area and interviewed all but two of the witnesses. They talked to the manager of the farm on which Townsel lived "and there was indication . . . that Dewey had had a drink on the morning of December 28th, 1955. As far as Dewey being drunk, there was never any evidence of any kind with regard thereto . . ." They did not talk to the two children who were eyewitnesses, eleven and twelve years of age, but on the trial these persons testified as appellant's counsel had been told they would. They did not talk to Dr. Coe, who had treated appellant's wound. On the night following the jury's verdict Dr. Coe advised Townsel's attorneys that when he treated him on the afternoon of the killing Townsel was severely intoxicated.

Reed B. Hogan, Administrator of the Coahoma County Hospital, stated that the hospital records reflected that appellant was admitted to the hospital emergency room at 3:00 p. m. and admitted through the business office at 4:40 p. m. Dr. I. S. Coe testified that he treated appellant for gunshot wounds on December 28. He saw him in the emergency room immediately after he was brought in, and the emergency records reflect that it was 3:00 p. m. When Dr. Coe examined appellant he was ''pretty well knocked out . . . he was drunk; unable to say how it happened.'' He said that appellant was ''stuporously drunk; he was unable to respond to any questions; he could not stand; and couldn't comprehend what you were saying to him.'' In his opinion appellant did not have sufficient mental capacity at the time Coe examined him to have any intent of any kind. One hour prior to the time he saw appellant, appellant ''could very well have been just highly intoxicated. The shock of being shot and what he had been through certainly caused the effect of alcohol just to overcome him.'' He could not tell how long appellant had been in that stuporous condition. He sewed up the wounds in appellant's back without an anesthetic, because he was ''completely anesthetized.'' Appellant had multiple bullet holes sprayed in him, and some of the shot had gone into his chest and caused a collapse of the left lung.

In rebuttal, the State offered five witnesses, all of whom testified that when they saw appellant he was in their opinion not drunk, he acted normally and was capable of forming a criminal intent. The deceased's mother had seen appellant the day of the killing on two occasions prior to his visit to the house. He did not appear to be drunk. Robert said that he chased Townsel at least a half mile; that appellant ran fast and well; and that he smelled no whiskey on him, and saw nothing unusual about his appearance. Deputy Sheriffs Butler, Smith and Bingham testified that when they saw appellant

shortly after the killing he answered questions intelligibly, did not stagger, walked all right, and did not appear to be intoxicated. Butler smelled no whiskey on appellant, but Smith and Bingham stated that they smelled a faint odor of alcohol on him. But they also said appellant gave no appearance of intoxication, and seemed to be normal, other than that he was in pain from the shotgun wounds. They took him to the hospital.

There was a dispute of fact with reference to the time of admission to the emergency room of the hospital. Dr. Coe and Hogan, testifying from hospital records, said that Townsel was admitted at 3:00 p. m. to the emergency room, and to the hospital business office at 4:40 p. m. The latter figure is undoubtedly correct. The "Report of Accident" in the hospital records states the patient's name and where injured, the date of injury, and "time: 3:00 p.m." It would appear that this has reference to the time of the infliction of the injury upon the patient. This interpretation is certainly more consistent with, and is the only way to reconcile the time factors with the testimony of the eyewitnesses and the deputy sheriffs.

Robert Jamison, Jr., said that appellant came to the house about 3:00 to 3:30 p. m. Deputy Sheriff Butler said that he received a call to go to the place where the killing occurred around 3:30 p. m. Ollie Jamison said that appellant came to the house about 3:00 p. m. Deputy Sheriff Butler said that he got a call to go to the farm around 3:30, and that Deputies Smith and Bingham took appellant into custody from him and left to go to Clarksdale around 4:00 o'clock or a few minutes after that. Smith thought that he took Townsel into custody about the middle of the afternoon. Bingham estimated that it was around the middle of the afternoon, about 3:00 p. m.

The great weight of this evidence indicates that the killing occurred around 3:00 p. m., that Deputy Sheriff

Butler arrested appellant about 3:30, and that some-time between 3:30 and 4:00 p. m. Deputies Smith and Bingham picked Townsel up and drove to the hospital in Clarksdale. So the overwhelming weight of the evidence by the witnesses shows that it was impossible for appellant to have been admitted to the emergency room of the hospital at 3:00 o'clock. This would indicate that the reference on the "Report of Accident" of the hospital to "3:00 p. m." pertained to the precedently stated "date of injury . . . time" of injury, and not to the time of admission to the hospital. This is consistent with the statement on the "summary sheet" of the hospital that the admission date was December 28 at "4:40 p. m." At any rate, the overwhelming weight of the evidence indicates that appellant was admitted to the hospital at least an hour after he had been shot.

## III.

 █ The circuit court overruled the motion for a new trial. The issue here is whether we are warranted in saying that the trial court abused its discretion in so doing, or whether it was manifestly wrong. These are the tests to be applied in this type of review. Bryant v. State, 172 Miss. 210, 216, 157 So. 346 (1934); Thornton v. State, 178 Miss. 304, 307, 170 So. 541 (1936). █ Moreover, the burden of proof on a motion for new trial is on the movant. Stewart v. State, 203 Miss. 295, 33 So. 2d 787 (1948).

 █ A concise statement of the criteria to be considered on a motion for a new trial is in 39 Am. Jur., New Trial, Section 158: "To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence is such as will probably change the result if a new trial is granted, that it has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is

not merely cumulative, or impeaching." See also Stewart v. State, supra; Carraway v. State, 167 Miss. 390, 148 So. 340 (1933); Brockman v. State, 216 Miss. 314, 62 So. 2d 362 (1953).

█ █ In the light of these requirements, we cannot say that the trial court abused its discretion or was manifestly wrong in overruling the motion for new trial on the ground of newly discovered evidence. In fact it was amply supported by the facts and the law. The offered evidence concerning appellant's alleged drunken condition an hour or more after the killing was not newly discovered evidence. An applicant must show that the evidence upon which he relies was in fact newly discovered or unknown to him until after the trial. Hence, "his application will be denied where it appears that he had knowledge or the evidence at the time of the trial; and this is true although he shows that he . . . failed to communicate it to his attorney." 39 Am. Jur., New Trial, Section 159. Evidence is not newly discovered where accused knew of it but did not mention it to his counsel. 23 C. J. S., Criminal Law, Section 1454 b, p. 1230. Carraway v. State, supra, involved this identical situation. There appellant knew the facts but failed to communicate them to his attorney, and failed to testify on the motion for new trial as to any excuse for such failure of communication. That is what happened here. If appellant were severely intoxicated at the time he killed his wife, he surely must have known it; yet he failed to communicate such knowledge to his attorneys, or to testify to any excuse for such failure to so advise his attorneys. They were diligent and represented him ably, but appellant cannot claim the evidence as newly discovered, where he necessarily knew of it at the time but did not mention it to counsel.

█ █ Another requirement is that the newly discovered evidence must be such as will probably change the result if a new trial is granted. 39 Am. Jur., New Trial,

Sections 158, 165, 166. The trial court was warranted in concluding that it was not probable that a different result would be obtained in another trial. ██ █ Moreover, "a dispute as to whether the new evidence has this probative effect is to be determined primarily by the trial court in its discretion." Ibid., Section 165; 23 C. J. S., Criminal Law, Section 1459. Dr. Coe testified that an hour before he examined appellant he probably was "just highly intoxicated", and that the shock of being shot and the resulting pain "certainly caused the effect of alcohol just to overcome him." Considering the record as a whole, and giving due weight to the testimony of eyewitnesses and the deputy sheriffs, this is undoubtedly what happened. Apparently appellant had had a drink or so of alcohol before he went to the house to kill his wife, but at the time of the crime it is undisputed that he was acting in a normal and rational manner. After the killing he was hit over the head with a heavy blow from a hoe. He was shot twice with a shotgun, and there was a delay of around an hour before he got to the hospital. As Dr. Coe testified, the shock and the pain caused the effect of the alcohol which he had previously consumed to overcome him by the time he reached the hospital.

██ █ The evidence is ample to support appellant's conviction. In fact, there is no contradiction of the testimony of four eyewitnesses and of the appellant's oral confession to the deputy sheriffs. For the foregoing reasons we cannot say that the trial court abused its discretion in overruling the motion for a new trial. Hence the case is affirmed, and Friday, the 22nd day of June, 1956, is fixed as the date for execution of the death sentence.

Affirmed, and Friday, the 22nd day of June, 1956, is fixed as the date for execution of the death sentence.

All justices concur except Holmes, J., who took no part.