## LANG *v.* STATE

No. 40711         January 27, 1958         100 So. 2d 138

*Collins & Brown,* Laurel, for appellant.

*J. R. Griffin, Asst. Atty. Gen.,* Jackson, for appellee.

LEE, J.

This Court, on the former appearance of this cause, Lang v. State, 92 So. 2d 670, sustained the appellant's petition, under Chapter 250, Laws of 1952, and granted him leave to file in the Circuit Court of Jones County, the trial court, a motion to vacate the judgment whereby he had been sentenced to serve a life term in the State Penitentiary for the crime of rape, subsequently affirmed by this Court, 87 So. 2d 265, and to grant him a new trial on account of newly discovered evidence.

The opinion therein detailed the allegations of the petition with respect to the rape on August 5, 1954, of Mrs. Edna Dreding by a Negro, five feet two inches to six inches tall and weighing one hundred and thirty to one hundred and thirty-five pounds, under threat of harm to her baby; her identity of the appellant as the rapist; that he was wearing a trench coat at the time; that, on the occasion, Mrs. Dreding's billfold, containing her wedding ring, was stolen; but that a fingerprint, lifted from the window ledge where the screen was removed, was not the fingerprint of the appellant.

The opinion further detailed the allegations of the petition wherein the newly discovered evidence was shown to be as follows: Mrs. Helen Sims, five feet seven and one-half inches tall, under threat of harm to her small child, was raped in Laurel during the night of June 15, 1956, by a Negro man shorter than she, after substantially the same pattern as the crime against Mrs. Dreding. On July 5, 1956, Leroy Moody, a colored male, twenty-six years old, five feet three inches tall, weighing one hundred and thirty pounds, confessed to the rape of Mrs. Sims. His fingerprints were taken and the fingerprint found on the window of Mrs. Dreding's apartment on August 5, 1954, proved to be his. At the time of Mrs. Dreding's rape, Leroy Moody was employed at a filling station about fifty to one hundred feet from the place where Mrs. Dreding's stolen billfold was found. On November

5, 1956, Ernestine Moody, the wife of Leroy Moody, was found in possession of a wedding ring, identified by Mrs. Dreding as hers and which was taken from her home in the billfold on the night of her rape. Ernestine Moody at first claimed that she bought the ring, but later admitted that Leroy Moody gave it to her. Leroy Moody stated that he bought the ring, while working at the filling station, from a man whom he did not know. Moody had a trench coat similar to the one worn by the Negro who attacked Mrs. Dreding. These allegations were all sworn to and were verified by the affidavits of the officers who investigated the crimes.

In the hearing before this Court, the State by its answer admitted in substance the allegations of the petition, but asked the Court to deny the same on the ground that the effect of the newly discovered evidence would amount to no more than additional or cumulative evidence on the issue which had been thoroughly litigated in the trial court.

In passing upon the sufficiency of the petition, the Court said: ''When the facts set out in the petition are considered together with the facts revealed by the transcript of the testimony in petitioner's trial, such grave doubt arises as to petitioner's guilt that no enlightened court dedicated to the plainest principles of justice should deny a judicial inquiry to determine whether the judgment should be vacated and a new trial granted. If there is no parallel case in the books, and if it can be said that there is no clear precedent for the entertainment of this petition, such should not deter us from the performance of our duty.''

It was pointed out that: ''* * * where the writ of error coram nobis does not lie, and a petition is filed under Chapter 250, Laws of 1952, bringing a case within the narrow limits stated in the following paragraph, we will entertain such petition as being a remedy supplemental to the writ of error coram nobis.''

.The narrow limits under which such a petition would be entertained were set forth in the following paragraph to wit: ''Such a petition should be confined to the narrowest limits compatible with justice; it will be sustained only if the newly discovered evidence is of such nature that it would be practically conclusive that it would cause a different result; it will not be sustained if the petitioner or his attorney knew of the existence of such evidence at the time of the trial, or could have discovered it by the exercise of due diligence; it will not be sustained if the newly discovered evidence is merely cumulative, or additional to that adduced at the trial; it will not be sustained if the newly discovered evidence merely tends to impeach other testimony offered at the trial; and it must be filed as soon as reasonably practical after the discovery of the new evidence.''

When the Court granted the appellant's petition, it thereby held that the allegations of the petition, together with the affidavits, brought it within the narrow limits under which the Court would entertain such petitions. This stemmed from the fact that ''such grave doubt arises as to petitioner's guilt.''

The opinion then admonished the trial court to ''hear the proof offered by the parties and, in the exercise of his sound discretion, determine whether a new trial should be granted.'' The purpose of such hearing was to give the State an opportunity to controvert the allegations, demand proof, if it so desired, and offer such contradictory evidence as it might desire.

Pursuant to the authority granted by this Court, Lang thereafter filed in the trial court his petition of like tenor and effect as the one which had been filed in this Court, accompanied by the affidavits of the investigating officers.

The State answered the petition but did not deny the truthfulness of the allegations or affidavits making up the petition. In effect it challenged the sufficiency of such allegations for the purposes intended.

At the outset of the hearing, counsel for the appellant inquired whether he would be required to adduce oral evidence to sustain his contentions. After questioning counsel, both for the State and the defendant, the court held that there was no denial by the State of the facts, and that necessarily they should be taken as true. He observed that the matter for consideration was the effect of those facts. Besides the State, through its counsel, signified that it did not desire to offer any oral testimony.

In other words, the petition before the trial judge was the same as the petition which had been previously considered by this Court.

The trial judge, in overruling the petition, expressed the opinion that there was a lack of diligence on the part of the appellant.

But Lang's conviction was affirmed by this Court on May 14, 1956. The Suggestion of Error was overruled June 28, 1956. The rape of Mrs. Sims occurred June 15, 1956. It was not until July 5, 1956, that Leroy Moody confessed to the rape of Mrs. Sims. However, counsel for the appellant were not advised of the newly discovered evidence here in question until the month of December 1956. It appears that appellant and his counsel moved as rapidly as reasonably possible under the circumstances. The petition was promptly filed here and a decision was rendered thereafter on February 25, 1957.

The court also attributed lack of diligence to the fact that Luther Austin, one of the attorneys who was appointed by the court to defend the case, did not sign the petition for a new trial. The record does not show participation by this attorney in the hearing. But the appellant's brief states, without dispute, that following the previous trial on the merits, Austin withdrew from the case. But be that as it may, it is clear that, if he had still been participating, he could not have found out about this evidence because it did not arise until after

Leroy Moody's arrest, and was not fully verified by the officers until the month of December 1956.

The learned trial judge, in his opinion, overruling the motion for a new trial, said in part: "A consideration of the admissible and competent newly discovered evidence certainly tends to establish the presence of Leroy Moody at the home of Mrs. Dreding on the night of the rape. The identification of the fingerprints on the window ledge as his places him definitely at the window. It adds to what was already known by way of identifying the particular person who placed the prints there. The possession of the ring by Moody's wife adds another link in the chain that fixes Moody's connection with the rape. It verifies what was already known, that the ring was stolen and further identifies Moody's participation. But neither of these facts precludes the presence of Lang if it be considered that such evidence does not impeach the evidence of the prosecutrix," who, according to her evidence, was positive in her identification.

Again the learned trial judge said: "Many factors in this case make it an extremely complicated one, and one not easy of decision." But he then finally observed that: "* * * the Court cannot say that the newly discovered evidence which the Court considers admissible, if presented to a jury, together with all the other evidence, would make it practically conclusive that a verdict of acquittal of the defendant Lang would result."

In the original trial, inasmuch as the assailant had represented to his victim that he had a "buddy", it was said that "the failure of the defendant's fingerprints to conform to those prints which were taken from the window did not necessarily create a reasonable doubt as to his guilt." It was pointed out as "not unreasonable that the original motive was burglary or rape, or both, in which he (the assailant) had an accomplice" in which event "the prints, which were lifted from the window, could be those of such accomplice" and "obviously would

not have matched those of the defendant.'' It was further pointed out that if ''the accomplice, if there was one, effected an entrance into the apartment through the window, and then let the assailant in through the door * * * no prints of the assailant would have been left on the window.'' Under the evidence then before the court, it was reasoned that the jury was warranted in finding that the fingerprint evidence was of no actual value.

However, when the newly discovered evidence is viewed in its proper perspective, the important question of the identification of the rapist of Mrs. Dreding recurs. When the fingerprint on the window ledge was finally solved, it established that Leroy Moody was in the apartment of Mrs. Dreding on the night of her rape. Her billfold, containing her wedding ring, and which was stolen at the time, was found within fifty to one hundred feet of the place where Moody was then working. When the wedding ring was finally located, it was in the possession of Ernestine Moody, given to her by her husband, Leroy Moody—the same Moody whose fingerprint was left on the window ledge of Mrs. Dreding's apartment on the night of her rape. Besides, Moody possessed a trench coat similar to the one, which was worn by the attacker of Mrs. Dreding, and his height and weight corresponded to the height and weight of her attacker. And this same Leroy Moody, less than two years later, after the same pattern, entered the home of Mrs. Helen Sims, and raped her!

It must be remembered that Mrs. Dreding did not see Lang's ''buddy'', if he had one. Whether there was in fact another Negro in the apartment at the time rests solely on the statement of her assailant. If in fact there was no ''buddy'' and her assailant alone was present in the apartment, it would be practically conclusive, under the newly discovered evidence, that Moody was the rapist.

The facts in this case are such that a trial jury, if fully apprised of them, could likely entertain a reasonable doubt as to the guilt of the appellant. They could reasonably rise so high in the minds of the jury as to be practically conclusive that they would cause a different result to be reached. The likelihood of such different result is not a mere possibility. It is a substantial probability.

Of course, if newly discovered evidence will not probably produce a different result or induce a different verdict, it is not sufficient to warrant the granting of a new trial. Carraway v. State, 167 Miss. 390, 148 So. 340; Thornton v. State, 178 Miss. 304, 170 So. 541; Stewart v. State, 203 Miss. 295, 33 So. 2d 787; Brockman v. State, 216 Miss. 314, 62 So. 2d 362; Townsel v. State, (Miss.) 87 So. 2d 481. But, conversely, if, by legal standards, it will probably produce a different result or induce a different verdict, it is sufficient and should require a new trial. This is the true rule.

Putting the newly discovered evidence alongside the evidence which was adduced in the original trial, the doubt as to the appellant's guilt becomes so grave that we cannot place the stamp of judicial approval upon his conviction and thus doom him to imprisonment in the penitentiary for the term of his natural life. We think that the learned trial judge, in the exercise of his judicial discretion, should have granted the new trial, and that the exercise of such discretion, under the particular facts of this case, required the granting of such new trial.

For the error in denying the motion for a new trial, the cause is reversed and remanded.

Reversed and remanded.

All Justices concur except *Holmes, J.,* who dissents.

It is with reluctance and the utmost deference that I presume to project my views in opposition to those of my learned brethren of the Court. I am constrained to

do so only because of a firm conviction that the decision of the majority usurps the judicial discretion which properly belongs to the trial court.

As I construe the majority opinion of this Court rendered on the former appearance of this cause as reported in 92 So. 2d 670, wherein the appellant was granted leave to file in the trial court a motion for a new trial based on newly discovered evidence, the Court did not hold that the claimed newly discovered evidence if true was of sufficient probative effect to entitle the appellant to a new trial. The Court held that the claimed newly discovered evidence presented a question of such gravity with respect to the guilt or innocence of the appellant as to warrant a judicial inquiry to determine whether the judgment of conviction should be vacated and a new trial granted. The scope of such judicial inquiry was not limited merely to the truth of the alleged newly discovered evidence, but extended as well to the probative effect of such evidence to produce a different result on a new trial. This Court admonished the trial court that the newly discovered evidence should be "of such nature that it would be practically conclusive that it would cause a different result." The Court then held that the matter of determining whether a new trial should be granted was a matter within the sound discretion of the trial court. The Court said:

"The trial court should hear the proof offered by the parties and, in the exercise of his sound discretion, determine whether a new trial should be granted."

In thus committing the determination of the question to the discretion of the trial court as to the truth of the new evidence and the probative effect thereof, this Court acted in accordance with its prior pronouncements and the authorities generally. In the case of Townsel v. State, 87 So. 2d 481, the Court said:

"The circuit court overruled the motion for a new trial. The issue here is whether we are warranted in

saying that the trial court abused its discretion in so doing, or whether it was manifestly wrong. These are the tests to be applied in this type of review. Bryant v. State (1934), 172 Miss. 210, 216, 157 So. 346; Thornton v. State (1936), 178 Miss. 304, 307, 170 So. 541. . . . . . The trial court was warranted in concluding that it was not probable that a different result would be obtained in another trial. Moreover, 'a dispute as to whether the new evidence has this probative effect is to be determined primarily by the trial court in its discretion.' 39 Am. Jur., New Trial, Sec. 165.''

Can it be said that the trial court in the case at bar abused its discretion in denying the appellant's motion for a new trial? I think not. It may be said that this Court went too far in saying that the new evidence should be ''of such nature that it would be practically conclusive that it would cause a different result'', nevertheless, this was the yardstick which this Court furnished the trial court for measuring the probative effect of the new evidence. However, if it be conceded that the true rule is that the new evidence must be of such decisive and conclusive character as to render a different result reasonably certain, I submit, with deference, that the trial court was amply warranted in denying the motion for a new trial and that it cannot be said that in so doing it abused its discretion.

The State did not controvert the truth of the claimed newly discovered evidence, but contended that the probative effect thereof was not such as to render a different result reasonably certain. The trial court, in the exercise of its sound discretion, sustained this contention of the State. The majority would now substitute this Court's discretion for that which properly belonged to the trial court. This, I think, is not warranted either by the facts or the law of this case. The trial court, in my humble opinion, was amply warranted in holding that the probative effect of the newly discovered evidence

was not such as to render a different result reasonably certain. The items of newly discovered evidence upon which the appellant mainly relies are the discovery subsequent to the trial that the fingerprints lifted from the window ledge of the victim's room were not those of the appellant but were those of Leroy Moody, and the discovery subsequent to the trial of the victim's ring in the possession of Leroy Moody's wife. This evidence, however, does not exculpate the appellant and fix guilt of the infamous crime upon Leroy Moody. It merely establishes the presence of Leroy Moody in the victim's home at the time of the commission of the crime. It does not preclude the presence of the appellant, whom Mrs. Dreding, the victim, positively identified as the perpetrator of the crime by size, color, voice, slump in walk, and a sweetish odor about his person. The evidence merely corroborates the testimony of Mrs. Dreding that the appellant told her at the time that he had a "buddy" with him who was holding her baby in the living room, and that if she did not submit to him he would kill both her and her baby. The evidence merely shows that this "buddy" was Leroy Moody. It was the province of the trial court in its discretion to evaluate this testimony. The Court, in affirming the appellant's conviction as reported in 87 So. 2d 265, has already placed its evaluation upon the fingerprint evidence and has held that "the jury was well warranted in finding that the fingerprint evidence was of no value whatever." The Court said:

"The failure of the defendant's fingerprints to conform to those prints which were taken from the window did not necessarily create a reasonable doubt as to his guilt. The assailant had represented to his victim that he had a 'buddy' with him. It is not unreasonable that the original motive was burglary or rape, or both, in which he actually had an accomplice. Mrs. Dreding's billfold was taken from the house, and was later found

under a truck near the Masonite plant. The prints, which were lifted from the window, could be those of such accomplice, in which event they obviously would not have matched those of the defendant. It is also not unreasonable that the accomplice, if there was one, effected an entrace into the apartment through the window, and then let the assailant in through the door. In that event, of course, no prints of the assailant would have been left on the window. It is apparent that the jury was well warranted in finding that the fingerprint evidence was of no actual value whatever.''

The finding of the wedding ring in the possession of Leroy Moody's wife is in the same category as the fingerprint evidence and serves only as a circumstance to establish the presence of Leroy Moody in the victim's home and does not preclude the presence of the appellant. The probative effect of this evidence should be no greater than the evaluation heretofore placed by this Court upon the fingerprint evidence. The trial court, on the hearing of the motion for a new trial, was therefore well warranted in finding that the newly discovered evidence was of no probative effect to render a different result reasonably certain.

It must be borne in mind that the matter of granting appellant's motion for a new trial was a matter within the sound discretion of the trial court. This Court cannot substitute its discretion for that of the trial court. Even though this Court may have rendered a different decision on the motion for a new trial, it cannot disturb the decision of the trial court unless such decision is manifestly wrong. I submit, with deference, that under the law and facts of this case this Court is not warranted in holding that the decision of the trial court is manifestly wrong. The judgment of the trial court, in my opinion, should therefore be affirmed.