661 So.2d 177 (1995)
Riley ELLIS
v.
STATE of Mississippi.
Nos. 91-KA-00710-SCT, 92-KA-01071-SCT.
Supreme Court of Mississippi.
March 30, 1995.
Rehearing Denied September 21, 1995.
Dissenting Opinions on Denial of Rehearing September 21, 1995.
Sim C. Dulaney, Jr., Port Gibson, for appellant.
Michael C. Moore, Atty. Gen., Jackson, DeWitt T. Allred, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and ROBERTS, JJ.
Dissenting Opinions by Chief Justice Hawkins and Justice McRae on Denial of Rehearing September 21, 1995.
*178 PITTMAN, Justice.

STATEMENT OF THE CASE
Riley Ellis was convicted on May 22, 1991, in the Circuit Court of Claiborne County, of the crime of sale of a controlled substance (cocaine), and was sentenced to a term of sixteen (16) years imprisonment. On June 27, 1991, the circuit court denied Ellis' original Motions for Judgment Notwithstanding the Verdict and New Trial.
On July 15, 1991, the appeal was certified by the circuit clerk, and thereafter, on October 21, 1991, Ellis filed an Extraordinary Motion for New Trial. Various motions to extend the briefing schedule in this Court were filed and ruled upon, and the circuit court initially ruled that it had been divested of jurisdiction in the case due to the perfection of the appeal.[1] This Court, on February 25, 1992, entered an Order directing that a hearing be conducted in the circuit court on the Defendant's Extraordinary Motion for New Trial. That hearing was held on July 17, 1992, and on August 11, 1992, the circuit court entered its Order denying the Motion for New Trial.
On this appeal, Ellis presented the following issues:
I. THE TRIAL COURT ERRED IN PERMITTING A STATE'S WITNESS TO BE RECALLED FOR THE PURPOSE OF THE ADMISSION OF THE COCAINE INTO EVIDENCE.
II. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL ON THE GROUND THAT THE STATE FAILED TO DISCLOSE TO THE DEFENDANT THAT THE DRUG ANALYST HAD BEEN DISMISSED FROM HIS JOB.
III. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL DUE TO THE ALLEGATIONS OF MISHANDLING OF EVIDENCE BY THE AGENTS OF THE DRUG TASK FORCE.
We affirm the lower court as to all issues. The trial court has discretion to permit the recall of witnesses. As such, the Defendant was required to show an abuse of discretion which he failed to prove. Additionally, Ellis fails to show any prejudice resulting from the recall of James Day. As to the denial of a new trial, we find that the evidence of which Ellis complains holds only impeachment value; therefore, Ellis was not entitled to a new trial based on the "newly discovered" evidence. There being no issues with merit, we affirm the conviction.

STATEMENT OF FACTS
On February 21, 1991, James Day was an undercover agent employed by the North Central Narcotics Task Force, headquartered at that time in Winona, Mississippi. At the request of Claiborne County Sheriff Frank Davis, James Day went to Claiborne County to make undercover drug buys. On the night of February 21, 1991, at approximately 10:00 p.m., Day, accompanied by Raymond Mitchell, a confidential informant, and Angela Groves, a known user, went to a convenience store in Port Gibson known as the Shop-a-Minit or Conoco. Ellis, the Defendant, was in his car in the parking lot, and Day approached him and made a $20.00 purchase of crack cocaine. Other facts as necessary are presented during the discussion of the issues that follow.

DISCUSSION OF LAW

I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE TO RECALL JAMES DAY FOR THE PURPOSE OF INTRODUCING INTO EVIDENCE THE EXHIBIT MARKED FOR IDENTIFICATION DURING HIS FIRST APPEARANCE ON THE WITNESS STAND AS THE STATE'S PRINCIPAL WITNESS INTO EVIDENCE.

I.
Ellis asserted that it was error for the trial court to allow the prosecution to recall James *179 Day to the witness stand for the purpose of admitting the cocaine into evidence. After making the drug buy from Ellis, Agent Day sealed the evidence in a plastic bag, initialled it, and took it back to the task force office. Another agent transported the evidence to the crime lab. On direct examination, Day identified the evidence, and the court at that time permitted it to be marked for identification only. Later, the State called as a witness Brady Downey from the crime lab. Based upon past experience and practice, it was the expectation of both the prosecutors and the trial judge that the evidence would have been retained at the crime lab after testing and that such evidence would have been brought to the courthouse and introduced through a crime lab witness. Because of a change in crime lab policies, however, this evidence had been returned by the crime lab to the task force, and it had been transported to the courthouse by Agent Day. The trial judge ruled, therefore, that Agent Day was the proper witness through whom to introduce the cocaine into evidence, and the trial judge permitted the State to recall Day to the witness stand for this purpose.
This assigned error is without merit. Miss.R.Evid. 611(a) states:
(a) Control by Court. The court shall exercise reasonable control over the mode and order of interrogating witness and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
In accord with 611(a), it is within the trial court's discretion to decide whether to allow a witness to be recalled to the stand. In the case sub judice, there was no showing of abuse of discretion nor did Ellis allege any prejudice by the recalling of Day. "We dispose of such contention by again observing that a trial is not a game but is a search for the truth." Brooks v. State, 172 So.2d 876 (Fla. Dist. Ct. App. 1965). Therefore, we find this assigned error to be without merit.

II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO SUSTAIN THE APPELLANT'S EXTRAORDINARY MOTION FOR A NEW TRIAL BECAUSE OF THE STATE'S FAILURE TO DISCLOSE TO THE APPELLANT'S ATTORNEY THAT THE DRUG ANALYST WHO TESTED THE SUBSTANCE ADMITTED INTO EVIDENCE AGAINST THE APPELLANT AT HIS TRIAL HAD, SIX DAYS PRIOR TO THE APPELLANT'S TRIAL DATE, CONFESSED TO THE CRIME OF STEALING OR TAMPERING WITH DRUGS ASSIGNED TO THE ANALYST FOR TESTING AT THE MISSISSIPPI CRIME LABORATORY.
The cocaine involved in this case was analyzed at the Mississippi Crime Lab by Forensic Scientist Jon Maddox, whose report was dated April 24, 1991. On May 15, 1991, Jon Maddox confessed to the Mississippi Crime Laboratory investigators for Internal Affairs that he stole the drug Dilaudid from a case in the Crime Laboratory's vault.
Ellis' trial began on May 21, 1991, and on that day the State called as a witness Brady E. Downey, a Crime Laboratory forensic scientist. Although the record does not reveal when Ellis' attorney was advised of the substitution of Downey for Maddox, the record indicates that Ellis' attorney was aware, prior to Downey's testimony, that Downey was the substitute representative from the crime laboratory.
Downey brought with him the Crime Laboratory's file in this case, and he testified based upon the file, that the substance tested by Jon Maddox was cocaine. The defense accepted Downey as an expert in the area of forensic science. During the direct examination of Downey, the defense interposed objections at several points. However, each objection was made with regard to the chain of custody of the drugs. In fact, Downey testified that the evidence tested positive for cocaine without Ellis raising any objection.[2] *180 The trial judge took the objections as hearsay objections, and the court ruled, without any further disagreement on the part of the defense, that Downey's testimony as to the Crime Laboratory test results was admissible under Miss.R.Evid. 803(6) and 703.[3] On cross-examination, Ellis' attorney did not question Downey as to the reliability of the test results or to the basis for Downey's expert opinion.
When asked by the State, on direct examination, why Jon Maddox himself was not there to testify, Downey answered, "I was informed that he was unable to appear in court today. The reason exactly, was not given, and I was also informed that no one else at the Jackson Laboratory was able to come testify due to previous court appearances." On cross-examination, Ellis' attorney asked no questions about Maddox or about why Downey, rather than Maddox, was testifying.
This Court ordered this case be remanded to the trial court following the appeal of Ellis' conviction for the crime of the sale of cocaine on May 22, 1991, for a hearing on an Extraordinary Motion For A New Trial Based On Newly Discovered Evidence. One of the primary reasons that Ellis sought a new trial was the fact that the State failed to disclose why Maddox was unavailable to testify during trial. The hearing on the motion was held on July 17, 1992. At the hearing the following stipulation was made concerning the discharge of Jon Maddox:
1. On May 14, 1991, Jon Maddox was employed as a full drug analyst by the Mississippi Crime Laboratory.
2. Jon Maddox was trained, educated and qualified to test any type of substance admitted to the drug analysis section of the crime laboratory.
3. On May 14, 1991, Mr. Maddox was observed and accused of stealing drugs from a case in the Mississippi Crime Laboratory's benevolence [sic] vault.
4. On May 14, 1991, Mr. Maddox was suspended as a drug analyst with the crime laboratory pending an internal affairs investigation and a subsequent criminal investigation of the charges brought against him.
5. The suspension and investigation commenced on May 14, 1991.
6. District Attorneys representing the state in on-going cases, including the District Attorney of the 9th Judicial Circuit Court District of Mississippi, were given notice and advised of Mr. Maddox's unavailability to testify and further advised the crime laboratory would be glad to either reanalyze the substances tested by Mr. Maddox or offer another drug analyst to testify on the drug analysis of Mr. Maddox.
7. The crime laboratory stated no other reason for Mr. Maddox not being available to testify in such cases.
8. On May 15, 1991, Mr. Maddox confessed to the Mississippi Crime Laboratory investigators for internal affairs he stole the drug Dilaudid from a case in the crime laboratory's benevolence [sic] vault.
9. The crime laboratory did not advise the District Attorney of the 9th Circuit Court Judicial District that Mr. Maddox was not available because he was suspended and under investigation on the charge of stealing drugs, nor did it advise said (district) attorney Mr. Maddox had confessed to the crime on May 15, 1991.
10. At the trial of Riley Ellis on Tuesday, May 21, 1991, Brady Downey, a drug analyst employed by the Mississippi Crime Laboratory at its Meridian Branch, testified as to the drug analysis done by Mr. Maddox in this case.

*181 11. When Mr. Downey, without any notice to the Defendant, was called as a witness by the State on the trial date, the State advised the Defendant Mr. Maddox was not present to testify because he was no longer employed by the Mississippi Crime Laboratory.
12. The State never disclosed unto the Defendant Riley Ellis or his attorney the fact that Jon Maddox was, at the time of the Defendant's trial, under suspension by the Mississippi Crime Laboratory because he was observed and accused of stealing drugs in a case in the crime laboratory's benevolence [sic] vault.
13. Evidence in this case at the trial of Riley Ellis was admitted after Mr. Downey had established the credibility of Mr. Maddox's drug analysis undertaken prior to his suspension on May 14, 1991.
After the hearing the trial court entered an order denying Ellis' motion for a new trial. We affirm the holding of the lower court.
The State argues that the defense failed to make an objection under the discovery rules to Downey's testimony and did not move for a "Box" continuance. Box v. State, 437 So.2d 19, 22-26 (Miss. 1983); Jones v. State, 481 So.2d 798, 803 (Miss. 1985).
Although in some respects distinguishable, we find United States v. Williams, 985 F.2d 749 (5th Cir.1993), involving drug tests performed by Jon Maddox, helpful in deciding this case. In Williams, the defendants argued that they were entitled to a new trial based upon evidence they discovered after trial that the Mississippi Crime Laboratory chemist, Jon Maddox, was caught pilfering drugs from the laboratory. The defendants argued that if they had been allowed to present this evidence, the jury could have concluded that Maddox tampered with the seized substances.
The defendants of Williams argued that evidence of Maddox's wrongdoing entitled them to a new trial on three grounds: "(1) the prosecution withheld evidence of Maddox's misconduct in violation of Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) the newly discovered evidence entitled them to a new trial under United States v. Nixon, 881 F.2d 1305 (5th Cir.1989); and (3) Maddox's possible tampering with the drugs was a break in the chain of custody of the evidence." The Court considered each argument in turn and found the following:

Brady v. Maryland holds "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1196. A Brady violation entitles a defendant to a new trial "only when the court determines that there is a reasonable probability that the trial result would have been different." United States v. Nixon, 881 F.2d 1305, 1308 (5th Cir.1989).
Under United States v. Nixon, newly discovered evidence may justify a new trial if: (1) the evidence was discovered after trial; (2) the failure to discover the evidence was not due to defendants' lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) a new trial probably would produce a new result. Nixon, 881 F.2d at 1311. We review the denial of a motion for a new trial based on newly discovered evidence for abuse of discretion. United States v. Alvarado, 898 F.2d 987, 994 (5th Cir. 1990).
We conclude that it is extremely unlikely that a jury presented with evidence of Maddox's misconduct would find that the substance the defendants flushed down the toilet was not cocaine or crack. The circumstances surrounding the disposition of the drugs reveal the defendants' belief that the drugs were illicit. Sergeant Hanner's field test identified the drugs as cocaine. No evidence was discovered that Maddox pilfered or used cocaine in any form. He was addicted to prescription drugs such as Dilaudid, Demerol, Tylox, and Percodan. No evidence suggests that he pilfered any other drugs from the state lab. At trial another chemist, Ted Chapman, testified that his analysis showed that the substances were cocaine and crack. The district court did not abuse its discretion in rejecting appellants' motion for new trial predicated on Brady and Nixon.

*182 Finally, we consider appellants' argument that Maddox's potential tampering with the evidence broke the chain of custody of the cocaine. Our review of the record gives us no reason to believe that Maddox tampered with the evidence in this case. Thus, the district court did not abuse its discretion in denying appellants' motion for new trial on grounds that the government's chain of custody predicate for the drugs was flawed. See United States v. Whitley, 905 F.2d 163 (7th Cir.1990).
Williams, 985 F.2d at 757 (emphasis added).
The grant or denial of a new trial based upon newly discovered evidence is within the discretion of the trial court, and this Court will not overrule the trial court unless it abused its discretion. Smith v. State, 492 So.2d 260, 263 (Miss. 1986). This Court has stated that newly discovered evidence warrants a new trial if the evidence will probably produce a different result or verdict; further, the proponent must show that the evidence "has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching." Smith v. State, 492 So.2d 260, 263 (Miss. 1986) (citing Townsel v. State, 228 Miss. 110, 118-19, 87 So.2d 481, 484 (Miss. 1956) (emphasis added)).
We do not find that the trial court abused its discretion. In accord with the criteria set forth in Smith, we find that Ellis would have only been able to use the new information for impeachment purposes. Id. This impeachment material is collateral to the issue of Ellis' guilt; and as we have stated, impeachment evidence is an improper ground for grant of a new trial on newly discovered evidence.
Furthermore, we note that this case is distinguishable from Kettle v. State, 641 So.2d 746 (Miss. 1994). In Kettle, this Court stated:
While the introduction of [a laboratory] report can meet the requirements of Rule 803(6) M.R.E., and may be competent prima facie evidence of what it purports, upon proper motion in such a case, the defendant is entitled to have the person who conducted the test testify in person.
Kettle, 641 So.2d at 747 (second emphasis added) (finding that such a motion was made in this case and reversing).
Unlike the defendant in Kettle, Ellis did not make a motion in limine nor did he object during trial on the grounds that Downey was not the actual tester of the cocaine, thus invoking his confrontation rights. Since no objection was raised, the testimony of Downey was properly admitted by the trial court.
Under Rule 803(6), therefore, a custodian of records of the Mississippi Crime Lab may introduce laboratory reports, except where the defendant objects on the ground that his Sixth Amendment right to confront the person who prepared the test is being violated.
Id. at 750.
Based upon the reasons as stated above, this Court affirms the findings of the lower court and finds this assigned error to be without merit.

III. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO SUSTAIN THE APPELLANT'S EXTRAORDINARY MOTION FOR A NEW TRIAL FOLLOWING ITS REMAND FROM MISSISSIPPI SUPREME COURT TO A TRIAL COURT FOR A HEARING ON JULY 17, 1992, ON THE GROUNDS THE STATE FAILED DURING DISCOVERY TO DISCLOSE TO THE APPELLANT'S ATTORNEY PRIOR TO HIS TRIAL THAT CERTAIN AGENTS OF THE NORTH CENTRAL MISSISSIPPI NARCOTICS TASK FORCE HABITUALLY VIOLATED THE NORMAL AND ACCEPTED PROCEDURES FOR SECURING DRUG EVIDENCE FROM THE TIME OF THE UNDERCOVER DRUG PURCHASE TO THE SUBMISSION AS EVIDENCE AT TRIAL.

1.
Ellis alleged that it was error for the trial court to deny his Motion for a New Trial *183 on the grounds of the alleged misconduct on the part of the task force agents. In the affidavit attached to his Extraordinary Motion for New Trial, Ellis alleged that agents of the North Central Mississippi Narcotics Task Force, including Agent James Day, the agent who made this case, did not properly separate and secure the substances purchased during narcotics buys and that this misconduct by the task force agents violated his due process rights.
The facts supporting this allegation are derived from testimony given in Womack. At the hearing, Former Task Force Agent Barbara Gant testified that she noticed unidentified drug evidence scattered about James Day's desk. Present at the time were agents James Day, Ed Word, and Kary Ellington. Task Force Agent Ed Word supported Gant's testimony and added that he had observed Day commingling evidence on other occasions. Montgomery County Sheriff Robert Tompkins also supported Gant's allegation of mishandled evidence by testifying that he had seen Ellington mix up unidentified evidence. The State called Task Force Chief James Stevens who recovered Day's briefcase after his suicide and found unidentified drugs in the briefcase. Task Force Agent Kary Ellington testified that the events as told by Gant and Word never happened. Finally, Claiborne County Sheriff Frank Davis testified that an investigation of Gant's allegations showed there was nothing to substantiate Gant's allegations.
In the Womack case, the trial judge found that there was no evidence tending to show any impropriety in the handling of evidence in that case. The trial court made the same finding in the case sub judice. In the Womack case, the trial court noted that this "new evidence" proffered by the defendant must be analyzed as character evidence under Miss.R.Evid. 404 dealing with prior specific acts. The court below, in discussing the Womack opinion, stated:
The testimony of Ms. Gant of the alleged incident viewed by her would come under Rule 404(b) of the Mississippi Rules of Evidence dealing with prior specific acts. The purpose would be to show or imply that on the night in question, that the witness, Kary Ellington, acted in a way that would be in harmony with the alleged prior specific acts. That is to say, that on the night of the alleged sale of cocaine by the Defendant, Womack, to the witness, Ellington, that he, Ellington, in fact, did not mark the evidence separately but placed it in a bag along with other evidence. To arrive at that ultimate inference, however, one would have to go through a maze of inferior inferences, all of which would not and could not be based on any direct testimony of Ms. Gant or anyone else. To allow such testimony, the Court in Womack and in the case sub judice would have to rule that (1) the evidence was relevant and (2) the probative value of such character evidence, of prior alleged specific acts, would outweigh the prejudicial effect of such testimony. The Court is of the opinion that the prejudicial effect would outweigh the probative value and that such testimony would tend to confuse the jury and allow the jury to make unreasonable inferences from the testimony. Therefore, the Court holds that even though the arrest of the Defendant, Ellis, took place prior to the alleged incident reported by Ms. Gant, that the Court's ruling in Womack, would be and is the same in the case sub judice.
Ellis argues that the testimony given at the Womack hearing seriously brought into question the evidence regarding security methods followed by the State's principal witness, James Day. Ellis states that the Court should especially consider the condition of the evidence discovered in Day's briefcase following his suicide.
Ellis argues that the trial court erred in finding that the testimony of Barbara Gant, Ed Word, and Sheriff Tompkins was not admissible. Ellis stated that the testimony was admissible because it would be probative as to whether the Task Force Agent James Day, correctly followed the proper procedures in securing the evidence to insure that Riley Ellis would not be convicted for selling rock cocaine with evidence which had been purchased from a violator other than Riley Ellis.

*184 2.
The trial court stated that it based its ruling on the fact that this evidence was excludable character evidence under Miss. R.Evid. 404. Rule 404(b) provides:
(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Although the Court ruled that the evidence could not be admitted to prove that the agents acted in conformity with the way they acted on a previous occasion, the judge applied the Miss.R.Evid., Rule 403 "balancing test." Miss.R.Evid. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
The Court specifically found that the testimony's prejudicial effect outweighed probative value and that such testimony would tend to confuse the jury and allow the jury to make unreasonable inferences from the testimony.
The State suggests that the case of Black v. State, 506 So.2d 264 (Miss. 1987), is helpful on this issue. In Black, the defendant, accused of aggravated assault against Fred Howard and claiming self-defense, sought to cross-examine Howard regarding past business dealings between the two of them. This Court noted that ordinarily it was better for the trial judge to err on the side of leniency rather than restrictiveness concerning cross-examination of a State witness by a defendant, but this does not mean that the trial judge does not have discretion with regard to the extent of cross-examination. The scope of cross-examination is wide, but that scope is "coextensive with the limits of relevancy measured by the issues." 506 So.2d at 267.
This Court found that the matters upon which the defendant in Black sought to cross-examine the victim were collateral. By analogy, the State argues that the trial judge implicitly made the same finding when he stated "there is no connection here with what [Barbara Gant] says she purportedly saw on that date, and the evidence we have here in trial. There has been no evidence to connect those two [matters]." Given the collateral nature of this evidence, and given further that this evidence fell squarely within the proscription of Rule 404, the State submitted that the proffered evidence was sufficiently extraneous so that restriction was a matter within the discretion of the trial judge and there was no showing that the trial judge abused his discretion.
The State argues further that the proof showed that Barbara Gant accused Agents Noland, Ellington and Day of mishandling evidence, and it showed also that her accusations were investigated by the Task Force Control Board and had been found to be without merit. Thus, the State submits that the proof offered by Ellis, even if it were relevant, was of exceedingly doubtful probative value. The State cites the trial judge's comments wherein the judge stated, "[A]ll you have out there is an accusation... . Anyone can make an accusation. That's why this evidence is frowned upon to be offered as credible evidence or reliable evidence at trial." The State argues that the nature of this "proof," as a mere accusation refuted by an official investigation, weighed even more on the prejudicial effect side of the scale as opposed to the probative value side.

3.
The testimony that this assigned error revolves around was given in Boris Womack v. State. The testimony that has the most bearing on the case sub judice was that made about Agent James Day.
The trial judge ruled that Day's testimony would not come under Miss.R.Evid. 404, but then proceeded to go through a Rule 403 balancing test. Although the trial judge did not so state, he apparently went to the balancing test as another means of excluding the evidence. It does not appear that the trial court abused its discretion in its conclusion of the prejudicial effect.

*185 CONCLUSION

The Court affirms the finding of the lower court based upon the fact that Ellis did not meet the standards as to whether "newly discovered evidence" warrants a new trial. This Court has stated, "that a new trial will be granted only if the new evidence makes it practically conclusive, or creates a substantial probability, that a different result will be reached upon a new trial." Sanders v. State, 440 So.2d 278, 288 (Miss. 1983); Johnson v. State, 359 So.2d 1371, 1375 (Miss. 1978); Lang v. State, 232 Miss. 616, 100 So.2d 138 (Miss. 1958). This Court stated in Ormond that a movant for a new trial must show (1) that the "evidence will probably produce a different result or verdict;" (2) due diligence; and (3) that the evidence "is material to the issue, and that it is not merely cumulative, or impeaching." Ormond v. State, 599 So.2d 951, 962 (Miss. 1992) (citing Smith v. State, 492 So.2d 260, 263 (Miss. 1986)).
The grant or denial of a new trial based on newly discovered evidence is within the discretion of the trial court, and this Court will not overrule the trial court unless it abused this discretion. Smith, 492 So.2d at 263.
In this case, even assuming due diligence, Ellis did not show that this "new evidence" would probably produce a different result, even if it were admitted into evidence. This was a case of an accusation which had been investigated and found to be without merit. Ellis did not show why it should be supposed that a new jury would probably acquit him on the basis of this testimony.
Finally, we affirm the lower court's denial of a new trial on the basis that even if Ellis had been given this information, he would have used it to impeach Day's testimony. Impeachment testimony is not a basis for granting a new trial on newly discovered evidence. Smith v. State, 492 So.2d at 263.
CONVICTION OF SALE OF COCAINE AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI STATE DEPARTMENT OF CORRECTIONS AFFIRMED.
PRATHER, P.J., and ROBERTS, J., concur.
HAWKINS, C.J., dissents with separate written opinion joined by SULLIVAN and McRAE, JJ.
BANKS, J., concurs in part with separate written opinion joined by DAN M. LEE, P.J., and SMITH, J.
BANKS, Justice, concurring in part:
I concur in the result reached by the majority. I write separately to make clear my continued adherence to the views expressed in my concurring opinion in Kettle v. State, that "records prepared by the Mississippi Crime Laboratory in anticipation of a criminal prosecution may not be introduced by the state against a criminal defendant under the auspices of Rule 803(6)." 641 So.2d 746, 750-751 (Miss. 1994). That view, and, I believe, the view of the majority in Kettle, would compel acknowledgment that the trial court here erred in concluding that the laboratory report, or testimony from it, was admissible under MRE 803(6).
While today's majority suggests that Ellis did not properly object on hearsay or confrontation clause grounds, I would not find that dispositive if, as the majority indicates, the trial court actually ruled on the hearsay question. The purpose the requirement of an objection is to put the trial court on notice and give it an opportunity to avoid the error. Kettle v. State, 641 So.2d 746 (Miss. 1994). If the basis for the objection is apparent from the context the error is preserved. Murphy v. State, 453 So.2d 1290 (Miss. 1984). Here it is not clear, MRE 803(6). It is, at most, debatable, then, whether the court was sufficiently aware of the full extent of the hearsay/confrontation problem with this testimony to excuse the failure to make the proper objection.
I reject the notion, implicit in the majority discussion of Kettle, that in order to properly preserve error in this regard, a criminal defendant must file a motion in limine and affirmatively seek the presence of the laboratory analyst who analyzed the substance in question. Nothing in our rules of evidence compels such a procedure. Moreover, in the instant case there was no advance indication that the state intended to rely upon MRE *186 803(6). Maddox had been scheduled to testify. Ellis should not be compelled to anticipate an evidentiary transgression of which he has no notice.
My concurrence in the result reached by the majority is based on Ellis' failure to raise the issue here rather than his failure to preserve it below. Neither of Ellis' three assignments of error speaks to the hearsay nature of the testimony. Harris v. State, 642 So.2d 1325, 1328 (Miss. 1994). With regard to the errors assigned, I agree with the majority that there was no reversible error.
DAN M. LEE, P.J., and SMITH, J., join this opinion.
HAWKINS, Chief Justice, dissenting:
I would reverse and remand for a new trial, and respectfully dissent.
Ellis had a Sixth Amendment right to have Jon Maddox, the MBN laboratory employee who actually performed the test to determine if the sale product was in fact cocaine, appear and testify. Kettle v. State, 641 So.2d 746 (Miss. 1994) (Banks, J., concurring, 641 So.2d at 750); Barnette v. State, 481 So.2d 788 (Miss. 1985). Ellis objected to Brady E. Downey, who did not make the analysis, testifying.
Also, it is my view, respectfully, that this Court does a grave disservice to long range law enforcement when we affirm a case based upon such sloppy handling of evidence by MBN. Today's decision will not encourage strict adherence to practices and procedures which preserve evidence, or employment of reliable personnel in sensitive, responsible positions.
A lot of financial and human capital is invested in our war on drugs. Practices and procedures such as the majority in fairness notes should neither be tolerated by the Executive branch, nor condoned in any manner by this Court. Our affirmance hardly discourages future malfeasance or corruption.
SULLIVAN and McRAE, JJ., join this opinion.

ON PETITION FOR REHEARING
Petition for Rehearing denied.
HAWKINS, C.J., DAN M. LEE, P.J., SULLIVAN and McRAE, JJ., would grant.
HAWKINS, C.J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
McRAE, J., dissents with separate written opinion joined by HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, J.

DISSENTING OPINION ON PETITION FOR REHEARING
HAWKINS, Chief Justice, dissenting:
As I wrote in the case on merits and reiterate here, I would reverse and remand for a new trial, and respectfully dissent to the denial of the petition for rehearing.
Ellis had a Sixth Amendment right to have Jon Maddox, the Mississippi Crime Laboratory employee who actually performed the test to determine if the sale product was in fact cocaine, appear and testify. Kettle v. State, 641 So.2d 746 (Miss. 1994) (Banks, J., concurring, 641 So.2d at 750); Barnette v. State, 481 So.2d 788 (Miss. 1985). Ellis objected to Brady E. Downey, who did not make the analysis, testifying.
Also, it is my view, respectfully, that this Court does a grave disservice to long range law enforcement when we affirm a case based upon such sloppy handling of evidence by Mississippi Crime Laboratory. Today's decision will not encourage strict adherence to practices and procedures which preserve evidence, or employment of reliable personnel in sensitive, responsible positions.
A lot of financial and human capital is invested in our war on drugs. Practices and procedures such as the majority in fairness notes should neither be tolerated by the Executive branch, nor condoned in any manner by this Court. Our affirmance hardly discourages future malfeasance or corruption.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.

DISSENTING OPINION ON PETITION FOR REHEARING
McRAE, Justice, dissenting:
As noted by the original majority opinion and the petition for rehearing, Ellis was *187 charged and convicted for a $20.00 sell of crack cocaine. Jon Maddox, a Forensic Scientist at the Mississippi Crime Lab who tested cocaine allegedly retrieved from Ellis, was designated to be the prosecution's witness. Maddox was dismissed approximately a week before the trial for not only mishandling drugs he tested, but he was also taking the drugs for personal consumption. The district attorney claimed he was not aware of the reasons for Maddox's dismissal at the time of trial. Ellis filed an Extraordinary Motion for a New trial which was denied by the lower court. This Court now upholds this denial on petition for rehearing. I respectfully dissent.
The sole issue on petition for rehearing is whether Ellis was afforded his confrontation rights under our constitution. At trial, the prosecution put on Brady E. Downey, another Crime Lab scientist, to testify as to the results of the substance being cocaine. Ellis admits that he did not use the magical words, "constitutional confrontation violations" when he objected to the testimony. However, he did object to Downey's testimony. The only reason the prosecution set forth for Maddox's absence was "he's unavailable." Ellis had an unequivocal right to cross-examine Maddox as to the accuracy of his tests conducted at the state laboratory, which identified the alleged substance to be cocaine. It is possible that Maddox, who was discovered by Internal Affairs to be a regular drug-user, could have been making every test positive in order to look good and hide or cover his drug problem from the department. Thus, the credibility of the witness's testimony was in jeopardy. Ellis was not given this opportunity. The right of confrontation should have been allowed in this case.
The majority pays lip service to the requirements under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Brady states that all suppressed evidence that was favorable to the accused violates due process where the evidence is material either to guilt or to punishment. 373 U.S. at 87, 83 S.Ct. at 1196. There is no doubt that the prosecution's witness, Brady Downey, provided the catalyst for a conviction. He couldn't be impeached because all he said was, "this is what the report of Maddox's says." Without Maddox's report, Ellis could not be convicted. Certainly, the determination that the substance was indeed cocaine was directly tied to Ellis' conviction.
I would have granted a petition for rehearing in this case.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.
NOTES
[1] This appeal originally involved two separate cases, State v. Riley Ellis and State v. Boris Womack. Assigned errors II and III in the case sub judice were considered and ruled on in State v. Boris Womack. By Order, these issues were consolidated on appeal. However, Womack was murdered on September 11, 1993. Thus, the Womack appeal was dismissed because it was moot.
[2] Downey never portrayed himself to be the actual tester of the exhibit.

BY MR. PENLEY: Did you actually perform these tests that were done on this file with Mr. Ellis as the defendant?
BY MR. DOWNEY: No, sir. I did not.
[3] The notes brought by Mr. Downey were not admitted into evidence. See Barnette v. State, 481 So.2d 788, 791 (Miss. 1985) (holding that it was reversible error to admit, over objection of Barnette, the certificate of analysis into evidence without testimony of analyst who prepared such).