LEE, J.,
for the Court:
¶ 1. Williams was convicted of aggravated assault. After Williams was convicted, an additional witness was discovered. The witness, Jeff Ivy, testified before the trial judge prior to the judge imposing a sentence on Williams for the verdict of guilty of aggravated assault. Based on the testi *592 mony presented by Ivy, counsel for Williams filed a motion for judgment notwithstanding the verdict (JNOV) or in the alternative a new trial. The motion was denied by the trial judge and a sentence was imposed. Feeling aggrieved by the decision of the lower court, Williams filed a timely appeal. Williams presents the following issue for our consideration whether the trial judge erred in denying the motion for a new trial based on the newly discovered testimony of Jeff Ivy.
FACTS
¶ 2. At approximately 3:15 p.m. Williams was traveling on Highway 6 near Nettle-ton, Mississippi. Additionally, the following pivotal individuals were traveling on Highway 6 at this time and were as follows: J.C. Holland, Mark Taylor, and a school bus containing the victim, Jay Pol-lan. J.C. Holland was pulling a trader which held equipment to his farm. Holland was followed by Williams and Taylor. Traveling in front of Holland, Williams, and Taylor, was a' school bus which was delivering children to their respective destinations.
¶ 3. Taylor testified that he was in a hurry to get home so he passed Holland. When Taylor passed Holland he ran Holland off the road. It is disputed as to whether Holland and Taylor cursed at each other, but what appears to be undisputed from the testimony is that Taylor gave Holland “the finger.” After Taylor passed Holland, Holland turned into the driveway leading to his home, and he exited the truck. Once Holland was outside of the truck he retrieved a rifle from inside the truck. Holland raised the rifle to check the firearm’s breech. Holland testified he had no intentions of harming anyone, but had merely retrieved the rifle in case it was needed for self-defense since he “did not know what was going on.” Williams testified that it was at this time that he passed Holland standing in his driveway and noticed Holland retrieving the rifle. Williams testified that once he saw the rifle he panicked and passed several cars on the right side on the shoulder of the road, and that once he reached the school bus a child stepped out and his arm struck the window of the vehicle. The child was Jay Pollan, and due to the injury inflicted by the vehicle driven by Williams, Pollan received approximately seventy stitches. Subsequently, Williams was indicted by a grand jury for aggravated assault and ultimately found guilty thereof.
¶ 4. Thereafter, a local newspaper wrote an article pertaining to Williams’s trial and the fact that a guilty verdict had been returned by the jury. Jeff Ivy and his wife saw this article and contacted the counsel for Williams, Melvin Ellis, III. Ivy informed Ellis that he and his wife were eye witnesses to the accident in question. Ellis had Ivy sign an affidavit and submitted the affidavit and testimony from Ivy prior to the sentencing. The relevant portions of the affidavit read as follows:
On Friday, September 9, 1994, me and my wife were on our way to Gilmore Hospital in Amory, Mississippi. It was around 3:00-3:30 p.m. in the afternoon. We were just outside of Nettleton on Highway 6, and were following a pickup. A pair of cars, one white car and a black sport utility vehicle passed us and the pickup. I don’t remember the order they were in, but the second one around cut in on the pickup and caused him to run off the road and sling rocks unto my car. The pickup then returned to the road. Less than probably an lé of a mile traffic stopped behind a school bus unloading kids. As we came up behind, and traffic was stopping, the pickup pulled into a driveway and pulled up nearly to the house. We stopped nearly even with the drive, then my wife told me to look over at the truck, and I saw the man get out of the truck, then he reached back in and started pulling out a gun, it appeared to be a rifle. He then walked about half the distance between the truck and us on the highway. We were watching, scared of what he was *593 doing, he then raised the rifle in the direction of the school bus. I then saw a car take off around the bus on the shoulder of the road[.] Then man then went back to his truck, put the gun back in, and started running towards the bus....
¶ 5. The testimony presented by Ivy at the sentencing hearing mainly consisted of Ivy reading the contents of the aforementioned affidavit. Based on the testimony given by Ivy, Ellis had made a motion for JNOV or in the alternative a new trial. The trial judge denied the motions and sentenced Williams.
DISCUSSION
WHETHER THE TRIAL COURT ERRED WHEN IT DENIED WILLIAMS’S MOTION FOR A NEW TRIAL BASED ON THE NEWLY DISCOVERED TESTIMONY OF JEFF IVY.
¶ 6. Williams argues that under Mississippi Rules of Civil Procedure 59 and 60 he was entitled to a JNOV or a new trial based on the testimony presented by Ivy which was discovered after the trial had concluded. On appeal, Williams is seeking relief in the form of a new trial. Williams argues that the trial judge abused his discretion when he failed to grant Williams’s motion. Furthermore, Williams argues that the criteria enumerated in Smith v. State, 492 So.2d 260 (Miss.1986), (superseded by statute on other grounds, see McClendon v. State, 539 So.2d 1375, 1377 (Miss.1989), called into doubt on other grounds, see Wright v. McAdory, 536 So.2d 897, 901 (Miss.1988)), for the granting of a new trial based on newly discovered evidence was met in the case at bar. As an alternative approach to the argument for the basis of granting a new trial, Williams argues that the trial judge’s statements at the sentencing hearing constructively admonished that a new trial was warranted; however, in lieu of a new trial he would receive a lighter sentence. This Court will first address the criteria enumerated in Smith v. State.
¶ 7. In Smith, the Mississippi Supreme Court stated that the movant seeking a new trial based on newly discovered evidence must provide evidence which satisfies the following elements: (1) that the new evidence was discovered since the trial, (2) that when using due diligence the evidence could not be discovered prior to trial, (3) that the evidence is material to the issue and that it is not merely cumulative or impeaching, and (4) that the evidence will probably produce a different result or verdict in the new trial. Smith, 492 So.2d at 263, see also Ellis v. State, 661 So.2d 177, 182 (Miss.1995). Whether the newly discovered evidence presented will likely change the outcome if a new trial were granted is a determination made by the trial court in its discretion and will not be overruled by this Court unless it is an abuse of discretion. Williams v. State, 669 So.2d 44, 53 (Miss.1996). This Court agrees with Williams relative to the fact that the testimony given by Ivy was discovered after the trial and probably could not have been discovered with due diligence prior to the commencement of the trial. However, beyond these facts we differ from the analysis presented by Williams, and for the reasons stated below determine that the trial court did not abuse its discretion when it denied the motions for a new trial presented by Williams.
¶ 8. The evidence presented by Ivy, although discovered after the trial, was merely cumulative or impeaching of prior testimony presented to the jury during the trial. See Moore v. State, 508 So.2d 666, 668 (Miss.1987) (defendant was convicted of manufacturing a controlled substance and the Mississippi Supreme Court affirmed the trial court’s ruling that he was not entitled to a new trial based on newly discovered testimony, when the members of the jury had heard similar testimony during the trial). The testimony of Ivy as recited in the facts of this opinion, through *594 the recitation of the contents of Ivy’s affidavit relative to the presence of a rifle, was cumulative to the testimony at trial before the jury given by Holland regarding the rifle. Holland did not dispute that he had retrieved a rifle from his truck. Additionally, Ivy testified that Holland raised the rifle in the direction of the school bus. Although, Holland denies that he aimed the rifle at anyone, Holland admitted during his testimony before the jury that he had pulled the rifle up and looked in the breech. The testimony given by Ivy relative to seeing the rifle was also cumulative to the testimony presented at the trial by Williams. Williams testified that he had seen Holland retrieving and holding the rifle, and that when he went around the cars and the school bus on the right side of the road it was due to panic and his attempt to flee from Holland. Additionally, this Court notes that Ivy’s testimony differs slightly from Holland’s regarding the fact that Holland testified that once Pollan was lying on the side of the road, he ran to his house to call for help; however, Ivy stated that he saw Holland run toward the bus. Nevertheless, this fact is not pertinent to the determining testimony already presented to the jury by Holland and Williams relative to the presence of a rifle and the resulting aggravating assault. With this in mind, it is unlikely the evidence presented by Ivy would have produced a different verdict from the jury if a new trial had been granted. Since this Court has determined that the newly discovered testimony presented by Ivy does not meet the aforementioned enumerated criteria, we must now address whether statements rendered by the trial judge at the sentencing hearing established the need for a new trial and showed an abuse of discretion on behalf of the trial judge.
¶ 9. Williams argues that at the sentencing hearing the trial judge made comments which constructively indicated that a new trial was warranted. Williams notes such statements made by the trial judge as, “Now, I’m granting you probation basically based upon the newly discovered evidence, Mr. Ivy coming forward this morning and substantiating, basically, what you told the jury. Rather than granting a new trial, I’m gonna place you on probation.” This Court notes that within the aforementioned statement by the trial judge it reads “substantiating, basically, what you told the jury,” which indicates the testimony presented by Ivy was cumulative in nature to that previously presented to the jury by Williams. Additionally, Williams argues since the trial judge limited his response on the motion for a new trial this bolsters his position that the trial judge erred when he failed to grant the new trial; however, in light of the aforementioned analysis under Smith we find the comments and limitation on response by counsel from the trial judge does not amount to an abuse of discretion and was harmless error. When it is argued that error has been committed but there is no prejudice it does not require reversal. Nicholson on Behalf of Gollott v. State, 672 So.2d 744, 751 (Miss.1996) Finding no abuse of discretion, we, therefore, affirm the judgment of the trial court.
¶ 10. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCE SUSPENDED AND WILLIAMS PLACED ON PROBATION FOR FIVE YEARS, TO PAY FINE OF $348 AND RESTITUTION OF $450 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONROE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.