BRIDGES, P.J.,
for the Court.
¶ 1. Charged with murdering Kenneth Shumaker, Jonathan Cooper went before the Washington County Circuit Court. After a two-day trial, the jury found Cooper guilty of manslaughter. The circuit court sentenced Cooper to a twenty-year *667 term in the custody of the Mississippi Department of Corrections. Cooper appeals and raises the following issues:
I. THE TRIAL COURT ERRED IN OVERRULING [COOPER’S] OBJECTION TO THE STATE’S RECALLING A WITNESS AGAINST HIM AFTER THIS WITNESS HAD BEEN EXAMINED BY THE STATE AND CROSS-EXAMINED. THIS RECALL OF THE WITNESS WAS THE DAY AFTER THE WITNESS’ TESTIMONY AND NOT FOR THE PURPOSES OF REDIRECT EXAMINATION.
II. THE TRIAL COURT ERRED IN REFUSING TO GRANT [COOPER’S] MOTION FOR A DIRECTED VERDICT OF ACQUITTAL AT THE CLOSE OF THE STATE’S CASE, IN REFUSING TO GRANT [COOPER’S] REQUESTED PEREMPTORY INSTRUCTION AND DENYING [COOPER’S] MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT AS SUCH VERDICT WAS CONTRARY TO THE LAW.
III. THE TRIAL COURT ERRED IN DENYING [COOPER’S] MOTION FOR A NEW TRIAL AS THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no error, we affirm.
FACTS
¶ 2. The events that led to Cooper’s conviction happened at Carolyn Cooper’s house during the early morning hours of May 25, 2002. Carolyn and Kenneth Shu-maker returned to Carolyn’s house after visiting some nightclubs in Greenville. Carolyn and Kenneth did not return to an empty house. Carolyn’s twin ten-year-old sons, Tredara and Cordera Cooper, and Kenneth’s son, Shaun Shumaker, then seven-years old, stayed at Carolyn’s house while their parents went out. The boys were not unsupervised though, as Carolyn’s cousin, Jonathan Cooper, stayed with the three boys.
¶ 3. When they returned to Carolyn’s house, Cooper was asleep in the living room and the boys were asleep in the room Cordera and Tredara shared. Carolyn woke the boys up and told them to get something to eat from the kitchen. Meanwhile, Carolyn and Kenneth argued about the sleeping arrangements. Their argument began in Carolyn’s bedroom. Carolyn testified that she did not want to argue, so she began to leave. According to Carolyn, when she turned around, Kenneth used his fist to hit her in the back of her head.
¶ 4. Carolyn proceeded down the hallway towards her living room. Kenneth followed her and set out to prevent her from leaving. Carolyn testified that Kenneth hit her again. When Carolyn reached her front door, she unlocked it and opened it slightly, but Kenneth pushed the door shut. Carolyn testified that Kenneth grabbed her by the throat and threw her on the couch. Carolyn grabbed a cordless phone and began dialing, when Kenneth took the phone from her and used the phone to hit Carolyn in the temple.
¶ 5. Cooper stood between Carolyn and Kenneth and tried to calm the situation. Kenneth did not appreciate Cooper’s interference. Kenneth told Cooper, “I’ll do you, too. I’ll beat the brakes off you, too.” Carolyn testified that Cooper unsuccessfully continued to try to calm Kenneth down. Kenneth was able to shove Carolyn, but he shoved her towards her front door. Taking the opportunity to leave, Carolyn left her house, went to a neighbor’s house *668 across the street, and called the Greenville Police Department. After Carolyn left, the only people left in Carolyn’s house were Cooper, Kenneth, and three young boys.
¶ 6. The three young boys were the only eyewitnesses to testify at trial. Cordera and Tredara’s version of events are similar to one another. Cooper went back into the boys’ bedroom, where the boys were. Kenneth started to follow Carolyn out of the house, but turned around to follow Cooper instead. They testified that Cooper tried to use a phone in their bedroom, but Kenneth took the phone from Cooper, snatched the phone out of the wall, and used the phone to hit Cooper in the jaw. Next, Kenneth began asking the boys where his bat was. Kenneth went room to room looking for a baseball bat but Cooper, still in Cordera and Tredara’s room, found it first.
¶ 7. Kenneth proceeded down the hallway, back towards the boys’ room. According to Cordera and Tredara’s version, when Kenneth saw Cooper, Kenneth swung at Cooper with his fist. Cooper ducked and avoided the strike, and got behind Kenneth. Kenneth swung again, but Cooper used the bat and hit Kenneth on the wrist. Next, Cooper swung and hit Kenneth in the head. Kenneth went down and did not get back up.
¶ 8. Shaun Shumaker’s (also referred to as Kinney Maiten in the record) version is distinctly different than Cordera and Tre-dara’s. According to Shaun, Cooper hit Kenneth with the bat, but he hit him twenty times, instead of two. Shaun testified that he hid his head under the covers, and could not see. However, he added that he peeked out from under the covers. Shaun also testified that Cooper did not fight Kenneth on his own. According to Shaun, Cooper and Cooper’s brother fought Kenneth at the same time.
¶ 9. Varied testimony notwithstanding, there is no question that Cooper killed Kenneth with a baseball bat. Cooper did not present a case suggesting that he did not kill Kenneth. Rather, Cooper suggested that he acted in self-defense.
ANALYSIS
I. THE TRIAL COURT ERRED IN OVERRULING [COOPER’S] OBJECTION TO THE STATE’S RECALLING A WITNESS AGAINST HIM AFTER THIS WITNESS HAD BEEN EXAMINED BY THE STATE AND CROSS-EXAMINED. THIS RECALL OF THE WITNESS WAS THE DAY AFTER THE WITNESS’ TESTIMONY AND NOT FOR THE PURPOSES OF REDIRECT EXAMINATION.
¶ 10. In this issue, Cooper claims the circuit court erred when it allowed the State to present testimony from Cordera Cooper. Cooper asks this Court to review the trial judge’s decision to allow Cord-era’s testimony.
¶ 11. The State’s ease-in-chief lasted for two days. On August 27, 2003, the State called Cordera Cooper as its sixth witness. After direct and cross-examination, Cord-era left the stand. Afterwards, the State called Shaun Shumaker to the stand. The State questioned Shaun, and Cooper cross-examined him. Then, the circuit court recessed for the evening and reconvened the next morning.
¶ 12. As its first witness for the second day of trial, the State called Cordera to the stand again. Cooper objected and asked the trial judge to forbid the State from recalling Cordera. Cooper argued that the circuit court should not allow the State to call Cordera to ask questions that the State forgot to ask Cordera on the previous day. Cooper did not cite any specific *669 authority that would forbid the State from recalling Cordera, other than “the normal practice of the court.” Based on a lack of authority that would prohibit recalling Cordera, the circuit court overruled Cooper’s objection and allowed the State to recall Cordera.
¶ 13. The State asked Cordera if anyone came over to Carolyn’s house after an ambulance took Kenneth to the hospital. Cordera responded that Shay, Cooper’s girlfriend, came over after the ambulance left. At that point, Cooper objected again and argued that by recalling Cordera, the State was conducting an improper rebuttal. The State responded that it was not calling Cordera on .redirect. Again, the circuit court overruled Cooper’s objection and allowed Cordera’s testimony. Cord-era went on to testify that Shay, Cooper’s girlfriend, went to Carolyn’s house, cleaned blood and vomit off the floor, and picked up the bat that Cooper used to strike Kenneth. On cross-examination, Cooper asked Cordera where Shaun was during the altercation between Cooper and Kenneth. Cordera repeated his previous testimony that Shaun did not watch Cooper and Kenneth fight because Shaun had his head under blankets.
¶ 14. First, Cooper claims that the circuit court’s decision to allow the State to recall Cordera actually allowed the State to circumvent the general rules of permissible redirect testimony. The scope of redirect examination, while largely within the discretion of the trial court, is limited to matters brought out during cross-examination. Evans v. State, 499 So.2d 781, 783 (Miss.1986) (citing UCCCR 5.08). This Court will only disturb a trial court’s ruling on matters pertaining to redirect if there has been a clear abuse of discretion. Evans, 499 So.2d at 782.
¶ 15. Here, the State specifically stated that it was not offering Cordera’s testimony for the purpose of redirect. According to the State, it recalled Cordera for a second direct examination. Cooper concedes that there is no rule that says a witness cannot be recalled once his testimony is complete. Rather, “[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective fore the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment and undue embarrassment.” M.R.E. 611(a). However, Cooper also claims that the circuit court erred in applying Rule 611(a).
¶ 16. A trial judge has discretion on whether to allow recall of a witnéss. Ellis v. State, 661 So.2d 177, 179 (Miss.1995). In Ellis, the Mississippi Supreme Court affirmed a circuit court’s decision to allow the State to recall a witness to the stand for the purpose of admitting cocaine into evidence. Id. Further, Ellis stated: “[i]n accord with 611(a), it is within the trial court’s discretion to decide whether to allow a witness to be recalled to the stand. In the case sub judice, there was no showing of abuse of discretion nor did Ellis allege any prejudice by the recalling of Day.” Id. Ellis went on to state that “a trial is not a game but is a search for the truth.” Id. (citing Brooks v. State, 172 So.2d 876 (Fla.Dist.Ct.App.1965)).
¶ 17. In Leffingwell v. State, 747 So.2d 879(¶ 23) (Miss.Ct.App.1999), this Court affirmed a circuit court’s decision to allow the State to recall a sheriff after he testified the previous day. On recall, the sheriff corrected his previous testimony regarding the number of shots fired incident to a homicide. Id. This Court stated that “[i]n the interest of the effective and accurate presentation of facts, it was well within the trial judge’s discretion to allow Sheriff Gray to retake the stand to state *670 the correct number of live and empty-shells that had been found.” Id.
¶ 18. In a different Ellis v. State, 799 So.2d 159(¶ 7) (Miss.Ct.App.2001), this Court affirmed a circuit court’s decision to allow recall of a witness. In this Ellis, the circuit court allowed the State to recall a witness in order to correct discrepancies in that witness’s statements. Id. at (¶ 6). Ellis went on to say “[n]either at trial or before this Court does Ellis offer any basis as to how this witness’s additional testimony might have been improperly tainted during the evening recess or what particular prejudice arose to the defense out of the fact that the trial court permitted her to be recalled.” Id. Further, Ellis stated:
Based on our review of the record, we can discover no prejudice to the defense arising out of this witness being recalled to the stand. Defense counsel was permitted to crossexamine the witness as to all matters brought out in her second direct testimony for the State. In actuality, it does not appear that any evidence of substantial value to the State was developed during this second examination beyond that already contained in the witness’s original testimony. Thus, even were it assumed for sake of argument that the trial court abused its discretion in permitting the witness to be recalled, it would not require reversal because it did not result in any apparent prejudice to the defense. Simply showing an error in ruling on admissibility of evidence does not require reversal unless some prejudice to the defense arising from this erroneous ruling can be shown. M.R.E. 103(a).
Id. at (¶ 7).
¶ 19. Accordingly, we cannot say that the circuit court abused its discretion when it allowed the State to recall Cord-era. Cooper had an opportunity to cross-examine Cordera. Also, the substance of Cordera’s testimony did not result in any prejudice to Cooper’s self-defense theory. During his subsequent direct testimony, Cordera testified that Shay, Cooper’s girlfriend, went to Carolyn’s house and cleaned up blood off the floor and picked up the bat that Cooper used to strike Kenneth. Cordera’s testimony had no bearing on whether or not Cooper acted in reasonable and necessary self-defense.
¶ 20. On cross-examination, Cooper bolstered his self-defense case when he asked Cordera where Kinney was during the altercation between Cooper and Kenneth. Cordera repeated his previous testimony that Shaun did not watch Cooper and Kenneth fight because Shaun had his head under blankets. Based on the discretionary standard involved and the lack of prejudice to Cooper, we cannot say that the trial judge abused his discretion in allowing Cordera’s recall testimony.
II. THE TRIAL COURT ERRED IN REFUSING TO GRANT [COOPER’S] MOTION FOR A DIRECTED VERDICT OF ACQUITTAL AT THE CLOSE OF THE STATE’S CASE, IN REFUSING TO GRANT [COOPER’S] REQUESTED PEREMPTORY INSTRUCTION AND DENYING [COOPER’S] MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT AS SUCH VERDICT WAS CONTRARY TO THE LAW.
¶ 21. Here, Cooper attacks the sufficiency of the evidence. When a defendant files a motion for directed verdict, “the trial court must consider all of the evidence-not just the evidence which supports the State’s case-in the light most favorable to the State.” Winters v. State, 473 So.2d 452, 459 (Miss.1985) (citations omitted). Further, “once the jury has returned a verdict of guilty in a criminal *671 case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.” Id.
¶22. Two of the three eyewitnesses were ten years old, and the third was seven years old. Cordera and Tredara, twelve at the time of trial, both testified to a similar version of events. Their testimony suggested that Cooper came to the aid of their mother, Carolyn, and acted in necessary self-defense. Further, Cordera and Tredara both testified that Cooper struck Kenneth twice: once on the wrist and again on the head.
¶23. However, Shaun, Kenneth’s son, nine at the time of trial, testified that not only did Kenneth fight Cooper, but fought Cooper’s brother at the same time. No other witness corroborated his testimony. According to Shaun, Cooper used the bat to hit Kenneth, but Shaun testified that Cooper hit Kenneth twenty times, as opposed to two.
¶24. Tredara and Cordera’s version and Shaun’s version contradict one another in more ways than just the number of blows. Tredara and Cordera testified that Shaun could not see the fight because Shaun had his head under the covers. While Shaun confirmed that he had his head under the covers and could only see dark when he opened his eyes, he also testified that he peeked out and saw the fight. Shaun testified that Tredara and Cordera could not see the fight because they were outside during the fight and only came back inside after the fight was over.
¶ 25. However, evidence came from sources other than eyewitnesses. Dr. Steven Hayne, forensic pathologist, testified during the State’s case-in-chief. Dr. Hayne testified that Kenneth’s forearm was broken in multiple sites. Dr. Hayne opined that Kenneth’s forearm injury was consistent with “defensive posturing.” When asked to explain the meaning of “defensive posturing,” Dr. Hayne explained:
Defensive posturing is an injury that is commonly located to the fingers, to the hand, or to the forearm in an attempt to ward off a blow to the face, neck, and upper chest area, and it is essentially instinctual in nature that one would almost without thinking — it’s almost a reflex response that when an object or a fist or some other device is swung at a person’s face, neck, and chest one raises the upper extremity, whether it be the hand, fingers, or forearm either right or left, to ward off that blow.
¶ 26. Further, Dr. Hayne testified that he found multiple fractures of Kenneth’s skull. He found those fractures “on the cranial vault and the skull cap, also on the base of the skull.” Dr. Hayne elaborated that, at a minimum, Kenneth received two head injuries due to blunt force trauma. When asked if he had an opinion as to the manner of Kenneth’s death, Dr. Hayne answered, “homicide.” Thus, the jury heard evidence that: (1) Cooper hit Kenneth on the wrist and proceeded to hit him in the head at least twice, (2) Cooper used a baseball bat to attack Kenneth, who was unarmed, (3) Cooper hit Kenneth in the head more than one time, and (4) the bones in Kenneth’s arm were shattered from “defensive posturing.”
¶27. A reasonable hypothetical juror could conclude that Cooper, having landed the first blow to Kenneth’s skull, acted unreasonably when he struck Kenneth in the head again. Not only did he strike him again, he struck him with an aluminum baseball bat. It is not outside the realm of possibility that a reasonable hypo *672 thetical juror could find that Cooper did not act in self-defense because Cooper, having landed a previous skull-crushing blow with a baseball bat, delivered a second skull-crushing blow. A -reasonable hypothetical juror could conclude that Kenneth would have been incapacitated by a strike with force sufficient to shatter his skull, so that he could not have presented a reasonable threat sufficient to warrant a similar follow-up strike to Kenneth’s head.
¶ 28. While testimony indicated that Cooper acted in self-defense and defense of others, testimony also indicated that Cooper acted unreasonably. “Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury.” Harveston v. State, 493 So.2d 365, 370 (Miss.1986). Under the circumstances, we defer to the jurors as the finders of fact, and the jury determined that Cooper acted unreasonably under the circumstances when the jury found Cooper guilty of manslaughter. Because the record contains sufficient evidence to support that conviction, we cannot find that the trial judge erred when he denied Cooper’s attacks on the sufficiency of the evidence. Accordingly, we affirm.
III. THE TRIAL COURT ERRED IN DENYING [COOPER’S] MOTION FOR A NEW TRIAL AS THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 29. Finally, Cooper claims that the circuit court should have granted his motion for a new trial. When reviewing a contention that suggests the jury verdict is against the overwhelming weight of the evidence, “this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Collins v. State, 757 So.2d 335, 337(¶ 5) (Miss.Ct.App.2000). We give the State “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Collins, 757 So.2d at (¶ 5) (citing Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992)). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Collins, 757 So.2d at (¶ 5).
¶ 30. The jury resolves conflicts in testimony. Hollins v. State, 799 So.2d 118, 122(¶ 10) (Miss.Ct.App.2001). They may accept or reject any utterances they hear based upon hearing and observing the witnesses as they testify. Id. “The jury is the sole judge of credibility of witnesses and the jury’s decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.” Id.
¶ 31. Cooper’s defense at trial amounted to his claim that he acted in self-defense. As mentioned, evidence indicated that Cooper acted unreasonably when he used a baseball bat to strike an unarmed man in the head at least twice with sufficient force to crush Kenneth’s skull. Testimony may have conflicted, but the jury resolved that conflict when the jury found Cooper guilty of manslaughter. This issue is without merit.
¶ 32. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
*673 KING, C.J, LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.